UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MICHAEL D. KELLEY, ) | |
| ) | |
| *Plaintiff*, ) | |
| v. ) | No. 1:08-cv-231 |
| ) | *Edgar/Lee* |
| DEPUTY HANK RITTER, HAMILTON ) | |
| COUNTY SHERIFF'S DEPT., DETECTIVE ) | |
| AGENT RODD WATTERS, ANDY ) | |
| BROWNE, In Their Individual and Official ) | |
| Capacities ) | |
| ) | |
| *Defendants*. ) | |

## **MEMORANDUM**

Michael D. Kelley ("Kelley") has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 (Court File No. 4). Although Kelley's claims are difficult to decipher, the Court discerns, from his factual allegations, that he is claiming Deputy Hank Ritter ("Ritter") violated his Fourth Amendment Rights when he conducted an alleged illegal stop of his vehicle; search of him and his vehicle; and seizure of United States currency from him and his vehicle.

In addition, Kelley claims Tennessee Bureau of Investigations ("T.B.I.") Agent Rodd Watters ("Agent Watters") and Detective Andy Browne ("Detective Browne") illegally and unconstitutionally obtained authority to conduct wiretapping of his phone based on false statements by Agent Watters and Detective Browne. Finally, Kelley claims Detective Browne illegally obtained a search warrant to search his home. Kelley seeks compensatory damages in the amount of twenty-five million dollars against each defendant and punitive damages in the amount of thirty-five million dollars against each defendant (Court File No. 14).

1

For the reasons explained below, the complaint will be **DISMISSED** in its entirety, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2), for failure to state a claim upon which relief may be granted because the claim is barred by the *Heck v. Humphrey*[1] favorable termination doctrine (Court File No. 14).[2] Accordingly, Agent Watters' motion for summary judgment will be **DENIED as MOOT** (Court File No. 44).

## I. Non-Dispositive Motions

Presently pending before the Court are Kelley's motions requesting a transcript, a restraining order, and discovery (Court File Nos. 32, 36, & 41). In addition, Defendants' motion requesting an extension of time in which to complete discovery is also before the Court (Court File No. 38). Because, as explained below, the case is being dismissed, these motions are **DENIED as MOOT** (Court File Nos. 32, 36, 38, & 41).

Also before the Court is Kelley's motion requesting an extension of time in which to respond to Agent Watters' motion for summary judgment (Court File No. 48). Because the case is being dismissed pursuant to the PLRA for failure to state a claim upon which relief may be granted since the claims are barred by the *Heck v. Humphrey* favorable termination doctrine, and because the Court has denied Agent Watters' motion for summary judgment as moot, a response by Kelley would be futile. Accordingly, Kelley's motion for an extension of time is **DENIED** (Court File No. 48).

---

[1] 512 U.S. 477 (1994).

[2] Plaintiff's amended complaint (Court File No. 14) replaces all previous complaints and amended complaints.

**II.     Standard of Review**

   *A.     Pro Se Pleadings*

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Boag v. MacDougall,* 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas,* 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); LRL Properties, 55 F.3d at 1103-04; *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools,* 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard,* 76 F.3d at 726; *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard,* 76 F.3d at

3

726 (citations omitted).

   *B.   Prison Litigation Reform Act Review*

This Court has an ongoing responsibility under the Prison Litigation Reform Act, 28 U.S.C. § 1915 (e)(2), to review Plaintiff's action and dismiss the action or any portion of the action which is frivolous or malicious, fails to state a claim for which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In reviewing Kelley's civil complaint pursuant to 28 U.S.C. § 1915(e)(2), this Court takes judicial notice of the record in the underlying criminal case of *United States of America v. Michael Kelley*, United States District Court for the Eastern District of Tennessee at Chattanooga, Criminal Case No. 1: 08-cr-51 (Crim. Court File Nos. 207, 208. 209, 240, 241, 246, & 288). Fed.R.Evid. 201(b). This is necessary because Kelley has not demonstrated his convictions or sentences have been reversed on direct appeal, expunged, declared invalid, or called into question by a federal court's § 2255 order. Therefore, since Kelley's convictions and sentences have not been invalidated, and a claim for damages that would imply the invalidity of a criminal conviction or sentence is not cognizable under § 1983 when such conviction or sentence has not been invalidated, *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Court must review Kelley's criminal convictions to determine whether a cognizable claim has been raised.

**III.   Background**

   *A.   Procedural History*

This case stems from a criminal investigation which resulted in the conviction of Kelley in the United State District Court of Tennessee at Chattanooga. It is necessary to summarize Kelley's

4

underlying criminal case in order to place his civil complaint into context. The facts and procedural history in the criminal case are discussed in some detail since Kelley's civil complaint brought under 42 U.S.C. § 1983 requires the application of the *Heck v. Humphrey* favorable termination rule.

Kelley was charged in a thirteen-count Superseding Indictment with various crimes in relation to alleged drug activities (Crim. Court File No. 71). Following the superseding indictment, Kelley moved to suppress the evidence seized from him, his vehicle, home, and wiretaps (Crim. Court File Nos. 127, 128, & 129). The matters were briefed and United States Magistrate Judge Susan K. Lee conducted a hearing on the motion to suppress evidence seized from Kelley's vehicle. It appears that the motions challenging the search of his home and the wiretaps were submitted on briefs without a hearing. After a thorough analysis, Judge Lee ultimately denied the motions to suppress evidence in three separate Report and Recommendations, all of which were adopted by the District Court Judge.

Kelley subsequently entered guilty pleas to Count One, charging conspiracy to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and Count Two, charging conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and was sentenced to a term of 188 months. (*United States of America v. Michael Kelley*, Criminal Action No. 1:08-cr-51, Plea Agreement, Crim. Court File No. 288; R & R on Plea Crim. Court File No. 289; Order Adopting R & R, Crim. Court File No. 296; Judgment, Crim. Court File No. 344)[3] Kelley filed a notice of appeal of the judgment order and all prior legals ruling on August 14, 2009.

The Court now turns to the circumstances surrounding Kelley's criminal proceedings and

---

[3] Hereinafter all references to documents in the criminal file will be identified as: (Crim. Court File No.   ).

convictions.

   *1.    Vehicle Search*

During the suppression hearing, the government presented three law enforcement witnesses to present the prosecution's theory of the case. There was no testimony to present Kelley's theory of the case. Thus, Judge Lee concluded the testimony of law enforcement was not controverted and that their testimony provided an accurate description of the relevant events and facts (Crim. Court File No. 207, p. 8).

On March 5, 2008, Kelley was stopped for a traffic violation while he was being investigated[4] for participating in an alleged large-scale conspiracy to distribute illegal drugs. A drug-canine was deployed and made a hit on Kelley's vehicle which resulted in a search and the confiscation of more than $69,000.00 (Crim. Court File No. 207, p. 2).

Judge Lee conducted an evidentiary hearing and prepared a Report and Recommendation for the District Judge. Judge Lee concluded the government showed probable cause to believe a civil traffic violation occurred to support the stop and that under "the totality of the circumstances, there was ample reasonable suspicion to detain [Kelley] for the canine deployment even if the warning citation was, or could have been, completed moments prior to the dog deployment, and the deployment did not unreasonably extend the traffic stop." (Crim. Court File No. 207). Thus Judge Lee concluded that the government met "its burden of showing the scope and length of the detention were reasonable given the totality of the circumstances and did not violate the Defendant's Fourth

---

   [4]   Included in the investigation were several wiretaps, including a wiretap on Kelley's communications. During the course of the intercepts and surveillance, officers obtained information showing Kelley's participation in the conspiracy by transporting money and cocaine between Chattanooga and Atlanta (Crim. Court File No. 207, p. 2).

6

Amendment rights." (Crim. Court File No. 207, p. 17).

Furthermore, Judge Lee concluded that Yasco was a well-trained, certified, and reliable drug-detection dog for purposes of establishing probable cause. Specifically, Judge Lee found that "the officers, who already had suspicions concerning Defendant's involvement in criminal activity, had probable cause for the warrantless search of Defendant's automobile, including the trunk and bag where money was located[,]" and that "the alert by Yasco formed a sufficient basis for probable cause and the subsequent search was not illegal." (Crim. Court File No. 107, p. 20). Finally, Judge Lee concluded it was reasonable for the officers to pat-down Kelley and thus, they properly seized the money he had on his person. Judge Leon Jordan, the United States District Judge presiding over Kelley's criminal case adopted Judge Lee's Report and Recommendation in its entirety, overruled Kelley's objections to the Report and Recommendation, and denied his motion to suppress.

### 2. *Search of Kelley's Residence*

Judge Lee also issued a very thorough and detailed Report and Recommendation concluding there was no constitutional violation with respect to the search of Kelley's residence (Crim. Court File No. 208). Kelley argued that it was a violation of the wiretap order for law enforcement to disclose information learned from the wiretap to a judge other than the judge who authorized the wiretaps. Judge Lee concluded the claim was not supported with any authority and that the express authorization in the wiretap orders permitted the use or disclosure of intercepts for investigatory purposes. Accordingly, Judge Lee concluded the totality of the circumstances described in Browne's affidavit clearly supported a finding of probable cause to search Kelley's home and recommended that his motion to suppress evidence seized from his home be denied (Crim. Court File No. 208). United States District Judge Leon Jordan adopted Judge Lee's Report and

7

Recommendation in its

entirety, overruled Kelley's objections to the Report and Recommendation, and denied his motion to suppress (Crim. Court File No. 241).

        *3.*    *Wiretaps*

Finally, Judge Lee issued a Report and Recommendation recommending Kelley's motion to suppress all evidence obtained as a result of wiretap warrants issued on Kelley's telephones on or about February 12 and 13, 2008, be denied (Crim. Court File No. 209). Specifically, Judge Lee concluded the affidavits and applications for the wiretaps satisfied the "necessity requirement" of Title III and that the "affidavits provide[d] ample probable cause for the orders authorizing the wiretaps." (Crim. Court File No. 209, p. 23). Judge Leon Jordan adopted Judge Lee's Report and Recommendation in its entirety, overruled Kelley's objections, and denied his motion to suppress evidence obtained as a result of the wiretaps (Crim. Court File No. 246).

    *B.*    *Plaintiff's Contentions*

The Court gleans, from the factual allegations in his complaint, that Kelley is raising the same claims he raised in his motions to suppress during his criminal proceedings. Kelley claims the warrantless search of him and his vehicle and the seizure of his money, the warrant for the search of his residence, and the warrant for the interception of his wire and electronic communications all violate the Fourth Amendment.

Specifically, Kelley contends Deputy Ritter stopped him for following too closely during the rush hour and that twenty-five minutes after receiving Kelley's identification and determining his license was valid, Deputy Ritter ordered Kelley out of the car to sign for the warning. Thereafter,

8

Deputy Ritter requested permission to search Kelley's car for drugs which Kelley denied. Deputy Ritter subsequently had Deputy Thompson deploy canine Yasco. Presumably, Kelley is claiming he was detained longer than necessary for a traffic violation for the purpose of permitting Deputy Thompson to deploy canine Yasco to conduct a search of the outside of his car. Canine Yasco allegedly made a "hit" and the vehicle was searched. As a result of the search, approximately $69,500.00 was confiscated from the vehicle and $1,570.00 from Kelley's pocket.

In addition, as he claimed in his federal criminal proceedings, Kelley claims that the warrant issued for a wiretap on his wire and electronic communications is illegal and unconstitutional because it was based on false statements and misrepresentations of law enforcement. Specifically, Kelley claims law enforcement discovered him based on an illegal wiretap placed on a co-defendant's phone. Kelley contends that because law enforcement discovered him from the alleged illegal wiretap on the co-defendant's phone, and because law enforcement allegedly made false statements in their application for the warrants to wiretap his and the co-defendant's phones, the wiretaps on his phones were illegal and unconstitutional.

Finally, Kelley claims the search warrant of his residence was illegal because law enforcement used information they received from the wiretaps contrary to the stated basis in the wiretap orders.

## IV. Analysis

As previously stated, the Court discerns from Kelley's pleadings that he is essentially making the same arguments counsel made in the suppression motions in his criminal case. Kelley is in effect claiming the interception of his communications as a result of the judicially authorized wiretaps were unconstitutional because the warrants were based on false testimony. Based on information

9

obtained from the wiretaps, law enforcement were watching Kelley when law enforcement observed a traffic violation and stopped him in his vehicle and searched him and his vehicle. Thus Kelley claims the stop and search of him and his vehicle, and the confiscation of thousands of dollars in United States currency violated his Fourth Amendment rights. Likewise, Kelley is claiming the search of his residence, which was based at least in part upon information obtained from the wiretaps, violated his Fourth Amendment rights.

For the reasons explained below, these claims are subject to summary dismissal on the authority of *Heck v. Humphrey,* 512 U.S. 477, 486 (1994) because a ruling in Kelley's favor would imply the invalidity of his conspiracy-money laundering and conspiracy-drug convictions since a favorable ruling would, in effect, mean the evidence against him was obtained in an illegal and unconstitutional manner.

### A. Heck v. Humphrey Doctrine

The *Heck* favorable termination rule provides that a plaintiff may not maintain a civil complaint under 42 U.S.C. § 1983 for harm caused by alleged unlawful actions of law enforcement, whose unlawfulness would render his federal judgment of conviction or sentence of imprisonment invalid, unless he pleads and proves his federal judgment of conviction has been invalidated. Therefore, any claims by Kelley which necessarily implies the invalidity of his judgment of conviction on Counts One and Two of the indictment, must be dismissed for failure to state a claim upon which relief may be granted, unless Kelley is able to demonstrate that his convictions have been invalidated. *Heck*, 512 U.S. at 486-87.

In *Heck,* a convicted and confined state prisoner commenced a civil rights action under 42 U.S.C. § 1983 against state law enforcement officers, alleging the officers engaged in an improper

10

investigation, destroyed exculpatory evidence, and caused an illegal voice identification to be used at his trial. The plaintiff sought only compensatory and punitive damages.

The Court dismissed the action concluding that before a plaintiff can recover damages for conduct "whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.[5] A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 486-87 (emphasis in original).

The *Heck* Court directed that when a state prisoner seeks damages in a § 1983 case, a "district court must consider whether a judgement in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Additionally, the Court instructed that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

Therefore, this Court must consider whether a judgment in favor of Kelley would necessarily imply the invalidity of his conviction or sentence. Kelley presently stands convicted on Counts One

---

[5] Although *Heck* dealt with a § 1983 action filed in federal court by a state prisoner, the Sixth Circuit has held that *Heck* applies to federal prisoners. *See Robinson v. Jones*, 142 F.3d 905, 907 (6th Cir. 1998) ("*Heck* holding applies equally to an action brought under *Bivens*"). Although the instant case is not a *Bivens* action, the same analysis makes *Heck* applicable to § 1983 cases filed by federal prisoners.

11

and Two of the indictment. All of his 42 U.S.C. § 1983 claims arise out of and are based on the facts and circumstances involved in Counts One and Two of the indictment, thus, as explained below, they must be dismissed for failure to state a claim upon which relief may be granted because such claims are barred by the *Heck* favorable termination rule.

    *B.*      *Application of Heck v. Humphrey*

In the case at bar, a determination that Kelley's Fourth Amendment rights were violated, as he suggests, would have a discernable effect on the validity of his convictions and sentence. Specifically, a finding in Kelley's favor would, in effect, be a finding that the evidence which was used to convict him was unconstitutionally obtained.

        1. The Wiretap Claim

In his plea agreement, Kelley stipulated that certain facts contained therein satisfied the offense elements. The facts to which he agreed had been obtained by law enforcement as a result of the wiretap, the stop and search of his person and his vehicle, and the search of his residence. For example, Kelley acknowledged that on March 5, 2008, he was transporting approximately $69,500 to Atlanta to deliver to Demarcus Akins in exchange for 3.1 kilograms of cocaine when uniformed officers stopped his vehicle (Crim. Court File No. 288, p. 4). Now however, Kelley is challenging the wiretaps which provided the information that he would be transporting the money and the subsequent stop which yielded that amount of cash.

The law is clear: A wiretap obtained through the use of material misstatements of fact in the application violates the wiretap statute, *see Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998); *United States v. Bianco*, 998 F.2d 1112, 1126 (2nd Cir. 1993), and the remedy for the violation of the wiretap statute in a criminal case is suppression of the evidence. *See* 18 U.S.C. § 2515;

12

2518(10(a). Therefore, success on a damages claim based on a violation of the wiretap statute could imply the invalidity of a plaintiff's underlying convictions and sentences. *See Bansal v. Russ*, 513 F.Supp.2d 264, 278 (E.D.Pa. 2007). Since the evidence obtained from the wiretap provided the evidence used to convict Kelley, were the Court to determine that the evidence itself was obtained as a result of untruthful information being presented to procure the wiretap warrants and that the subsequent wiretap, stop, searches, and seizures were illegal, such a finding would imply that his convictions for money laundering and conspiracy to distribute cocaine were invalid.

### 2. Search of Vehicle and Residence Claims

Likewise, Kelley stipulated that the search of his vehicle resulted in the seizure of approximately $69,000.00 which he was transporting to Atlanta to deliver to Demarcus Akins in exchange for 3.1 kilograms of cocaine, and that the search of his residence resulted in the seizure of approximately 6 ounces of cocaine hydrochloride, several thousand dollars, a high-volume money counter, baggies and other indicia of drug trafficking. In addition, Kelley admitted to participating in a conspiracy to distribute 5 kilograms or more of cocaine and a conspiracy to commit money laundering. His conviction rested in part on the evidenced obtained from his vehicle and from his residence. In addition, the challenged stop and search of his vehicle and search warrant for his residence rested in part on information obtained as a result of the challenged wiretap. Consequently, for the same reasons Kelley's challenge to the wiretap is *Heck*-barred, the attack on the search of his vehicle and residence are likewise prohibited by the *Heck* doctrine.

In summary, Kelley's claims are a direct attack on the validity of the search of him and his vehicle, the search of his residence, and the wiretap warrants, all of which provided the evidence to support his current federal convictions. Kelley is claiming the initial stop and search of him and his

13

car; the search of his residence; and the interceptions of his communications revealing his involvement in the drug conspiracy and money laundering are illegal. Therefore, a judgment in his favor would necessarily imply the invalidity of his criminal convictions. The search of Kelley, his vehicle, and his house, as well as the wiretaps, provide the proof of his involvement with the distribution of drugs and money laundering conspiracies. Since Kelley's challenge to the stop, searches, and wiretaps in his federal criminal case would implicate the invalidity of his criminal convictions, this claim is premature and subject to dismissal under *Heck*. Therefore, these claims are barred.

Accordingly, Kelley's complaint will be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2) and the *Heck v. Humphrey* doctrine because no cause of action has accrued since the criminal convictions have not been invalidated.

## V.     Conclusion

Accordingly, for the reasons stated herein, Kelley's complaint will be **DISMISSED** *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted because the claims are barred by the *Heck v. Humphrey* favorable termination doctrine.

An appropriate judgment will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

14